# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

HAROLD DAVEY CASSELL,
ADC #73885                                                                                    PLAINTIFF

V.                          5:16CV00122 BRW/JTR

RORY GRIFFIN, Deputy Director,
Arkansas Department of Correction, et al.                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received by the Clerk of this Court within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff, Harold Davey Cassell ("Cassell"), is a prisoner in the Cummins Unit of the Arkansas Department of Correction ("ADC"). He has filed this *pro se* § 1983 action alleging that, since April of 2015: (1) Defendants Dr. Jeffrey Stieve ("Dr. Stieve"), RN Dana Peyton ("RN Peyton"), APN LaSonya Griswold ("APN Griswold"), APN Estella Bland ("APN Bland"), and Correct Care Solutions, LLC., ("CCS") failed to provide him with constitutionally inadequate medical care for hepatitis C; and (2) ADC Deputy Director for Health and Correctional Services Rory Griffin ("Griffin") failed to take corrective action after reading his grievances and a letter challenging the medical care he was receiving for that illness.[1] *Doc. 2.*

Dr. Stieve, RN Peyton, APN Griswold, APN Bland, and CCS have filed a Motion for Summary Judgment on the merits of Cassell's inadequate medical care claim, a Brief in Support, a Statement of Undisputed Facts, and a Reply. *Docs. 56, 57, 58, & 73.* Cassell has filed two Responses, a Brief in Support, and a Statement of Disputed Facts. *Docs. 70, 71, 72, & 75.*

Griffin has separately filed a Motion for Summary Judgment on the merits of Cassell's corrective inaction claim, a Brief in Support, a Statement of Undisputed

---

[1] During screening mandated by 28 U.S.C. § 1915A, the Court: (1) dismissed, with prejudice, Cassell's claims against Defendants the State of Arkansas and the Arkansas Board of Correction; and (2) dismissed, without prejudice, Cassell's claims against Defendants Hutchinson, Kelley, Wilson, and Floss. *Docs. 5 & 8.*

2

Facts, and a Reply. *Docs. 62, 63, 64 & 74.* Cassell has filed a Response, a Brief in Support, and a Statement of Disputed Facts. *Docs. 67, 68, & 69.*

Before addressing the merits of the Motions for Summary Judgment, the Court will summarize the relevant facts giving rise to Cassell's claims:[2]

1. Dr. Stieve is the Regional Medical Director for CCS, which is a corporation that provides medical services to ADC prisoners. He also is the chairman of the CCS hepatitis review committee, which meets monthly to monitor the progress and treatment of prisoners with hepatitis. *Doc. 57, Ex. 5.*

2. In 1999, Cassell was diagnosed with hepatitis C ("HCV"). During the next fifteen years, ADC medical providers unsuccessfully treated Cassell's HCV with two different courses of drug therapy. As result of his chronic HCV, Cassell has esophageal ulcers and stage 3 liver cirrhosis.[3] He also has tuberculosis, hypertension, and low platelets. *Doc. 57, Ex. 2 at 60-62; Ex. 5.*

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] In April of 2002, Cassell received Interferon with Ribavirin, and in January of 2005, he received Pegylated Interferon and Ribavirin. *Doc. 57, Ex. 4.* The medical care Cassell received for HCV *before April of 2015*, has been reviewed in two prior lawsuits, and is *not* at issue in this case. *See Cassell v. Corr. Med. Serv.,* 5:04CV00093 WRW/HDY*; Cassell v. Correct Care Sol., LLC,* 14CV00403 DPM/JJV.

3

3. On April 20, 2015, Dr. Stieve started Cassell on a twelve week course of Harvoni, which was "the standard for care at that time" for relapsing HCV patients in Cassell's genotype. Cassell completed that treatment in July of 2015. *Doc. 57, Ex. 5 at 2-3.*

4. On October 13, 2015, laboratory tests revealed that Cassell's HCV had relapsed. *Doc. 57, Ex. 1 at 92-93, Ex. 5.*

5. On November 4, 2015, APN Griswold examined Cassell; told him that his HCV had relapsed; renewed his medications; and explained that his condition would be regularly monitored in the prison infirmary. *Doc. 57, Ex. 1 at 96.*

6. On December 1, 2015, Cassell sent RN Peyton a Request for Interview asking if APN Griswold had contacted Dr. Stieve about further HCV treatment. *Doc. 2 at 27.*

7. On December 10, 2015, APN Bland examined Cassell; renewed his medications; and explained that the hepatitis review committee was deciding whether there were any further drug treatment options. *Doc. 57, Ex. 1 at 97.*

8. On January 18, 2016, Dr. Stieve recorded in Cassell's medical records that: (a) "there is no current evidence that repeating this treatment [Harvoni] for the same duration or a longer course of treatment is of benefit to this patient's HCV infection;" and (b) "should the patient's condition worsen, or should other treatments

become available, they will be discussed for their appropriateness for this patient in the scheduled hepatitis committee meetings." Dr. Stieve also ordered that Cassell's condition be routinely monitored in the prison infirmary. *Doc. 57, Ex. 2 at 1.*

9. Thereafter, Cassell was monitored in the prison infirmary, where his blood levels and enzymes where routinely checked. *Doc. 57, Ex. 2.*

10. On August 9, 2016, Dr. Stieve noted in Cassell's medical records that there was "no clear direction in national standards for re-treating [Cassell's HCV] despite new drug release Epclusa." Dr. Stieve also ordered an abdominal ultrasound to evaluate the side effects of Cassell's HCV. *Doc. 57, Ex. 2 at 35-36.*

11. On September 15, 2016, an abdominal ultrasound detected a cyst on Cassell's left kidney. *Doc. 57, Ex. 2 at 44.*

12. On November 4, 2016, Dr. Stieve ordered a second abdominal ultrasound and scheduled an evaluation at the University of Arkansas for Medical Sciences ("UAMS") hepatitis clinic to determine whether: (a) Cassell was a candidate for a liver transplant; (b) they recommended any additional drug treatment for Cassell's HCV; and (c) the kidney cysts needed medical treatment. *Doc. 57, Ex. 2 at 60-61; Ex. 4.*

13. On January 3, 2017, an abdominal ultrasound revealed two kidney cysts

and a "probable 2cm hemangioma" in Cassell's liver. *Doc. 57, Ex. 1 at 77.*

14. On January 23, 2017, a physician at the UAMS hepatitis clinic: (a) examined Cassell; (b) determined that he was not a candidate for a liver transplant; (c) explained that "Harvoni failures," such as Cassell "do not have any current options for further HCV treatment at this time;" and (d) recommended that Cassell receive prophylaxis medication for esophageal varices and routine medical monitoring. He did not make any recommendations for treatment of Cassell's kidney cysts or liver hemangioma. *Doc. 57, Ex. 2 at 61 & 78; Ex. 4.*

15. Dr. Stieve concludes, in his professional medical opinion, that the course of care provided for Cassell's HCV was medically "appropriate" and "consistent with sound medical practices." *Doc. 57, Ex. 4 at 3.*

## II. Discussion

Defendants argue that they are entitled to summary judgment because Cassell does not have sufficient evidence to proceed to trial on his inadequate medical care claims. The Court agrees.

To avoid summary judgment, Cassell must have evidence demonstrating that: (1) he had an objectively serious need for treatment of HCV; and (2) Defendants subjectively knew of, but were deliberately indifferent to, that serious medical need. *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614

6

F.3d 445, 460 (8th Cir. 2010).

As to the second element, which is the crux of this case, the Eighth Circuit has clarified that deliberate indifference goes well beyond negligence or gross negligence, and "requires proof of a reckless disregard of the known risk."[4] *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

For the following reasons, the Court concludes that each Defendant is entitled to summary judgment because Cassell has filed to produce evidence demonstrating that any of them were deliberately indifferent in treating his HCV. *See Meuir v. Greene Cnty. Jail Emp.,* 487 F.3d 1115, 1118 (8th Cir. 2007) (to defeat summary judgment, a prisoner "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded" his need for medical care).

**A.  Dr. Stieve**

There are simply *no facts* in the record demonstrating that Dr. Stieve was deliberately indifferent to Cassell's objectively serious medical need for HCV treatment.

To the contrary, it is *undisputed* that Dr. Stieve: (1) gave Cassell a twelve

---

[4] The parties *agree* that Cassell had an objectively serious medical need.

week course of Harvoni, which he avers was the appropriate "standard of care at the time" for HCV patients with Cassell's genotype; (2) ordered chronic care monitoring in the prison infirmary, where Cassell's blood levels and enzymes were routinely checked; (3) scheduled two abdominal ultrasounds; (4) periodically reviewed Cassell's medical status and treatment options with the hepatitis review committee; and (5) sent Cassell to the UAMS hepatitis clinic for a second opinion on treatment options. *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Reid v. Griffin,* 808 F.3d 1191, 1193 (8th Cir. 2015) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"). Importantly, it is *undisputed* that a UAMS physician independently examined Cassell and determined, in his professional medical opinion, that Dr. Stieve's course of care was medically appropriate.

Cassell argues that Dr. Stieve was deliberately indifferent by failing to order an upper endoscopy and other diagnostic tests to assess the damage HCV was causing to his esophagus, kidneys, and liver. However, Cassell's subjective and medically unsubstantiated disagreement with the Dr. Stieve's course of care, *which was consistent with the UAMS physician's recommendation*, does not rise to the level

of a constitutional violation. *See Langford,* 614 F.3d at 460; *Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006).

Cassell also contends that, based on the excerpts from several complex and detailed medical articles, Dr. Stieve should have: (1) given him Harvoni for twenty-four weeks, instead of twelve weeks; and (2) retreated his HCV relapse with a second round of Harvoni. *Doc. 57, Ex. 3 at 22-25.* However, Cassell, *who has no medical training,* is not qualified to interpret those scientific articles. *Id., Ex. 3 at 6-9.* Further, Cassell has not offered any expert testimony explaining whether, given his complex medical condition, the information in those articles is applicable to him. Finally, and most importantly, doctors are free to exercise their independent professional medical judgment without violating the Constitution. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008); *Dulany*, 132 F.3d 1234, 1240 (8th Cir. 1997). The possibility that other doctors might have suggested a different course of treatment for Cassell's HCV does not rise to the level of deliberate indifference. *See White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness"); *Acord v. Brown*, 43 F.3d 1471 (6th Cir. Dec. 5, 1994) (same) (unpublished opinion); *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th

Cir. 1996) ("Mere differences of opinion among medical personnel regarding a prisoner's appropriate treatment do not give rise to deliberate indifference").

Cassell admits that he is not currently a candidate for a liver transplant. However, he asks the Court to order the ADC to pay for a liver transplant *if* it is deemed "appropriate in the future" and to provide him with medications that *may* be approved someday for the treatment of his HCV. *Doc. 71*. Cassell's highly speculative and anticipatory requests are not ripe for judicial review. *See Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (courts must refrain "through premature adjudication, from entangling themselves in abstract disagreements"); *Ripplin Shoals & Land Co. v. U.S. Army Corps. of Engrs.*, 440 F.3d 1038, 1042-43 (8th Cir. 2006) (courts are prohibited from issuing "advisory opinions" stating "what the law would be upon a hypothetical state of facts").

Accordingly, the Court concludes that Dr. Stieve is entitled to summary judgment, and recommends that Cassell's inadequate medical care claim against him be dismissed, with prejudice.

**B.     RN Peyton, APN Griswold, and APN Bland**

Cassell alleges that Defendants RN Peyton, APN Griswold, and APN Bland were deliberately indifferent by failing to promptly respond to his requests for information about his HCV treatment plan and to notify Dr. Stieve of his various test results. *Doc. 58.*

However, to avoid summary judgment, Cassell "must place verifying medical evidence in the record to establish the detrimental effect" of these alleged delays. *See Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016); *Gibson*, 433 F.3d at 646-47. He has *not* produced any such evidence. To the contrary, it is *undisputed*, that Cassell did not receive any further treatment based on the various medical tests that were completed after April of 2015. Further, Dr. Stieve states, in his unrefutted affidavit, that "there was no need for Ms. Bland, Ms. Griswold, or Ms. Peyton to contact me" because he was aware of Cassell's test results and otherwise routinely monitoring his medical condition. *Doc. 57, Ex. 4 at 3-4*.

Accordingly, the Court concludes that RN Peyton, APN Griswold, and APN Bland are entitled to summary judgment, and that Cassell's inadequate medical care claims against them should be dismissed, with prejudice.

**C.   CCS**

Cassell alleges that CCS was deliberately indifferent by implementing a policy or "algorithm" that prohibited him from receiving further drug treatment for HCV. *Doc. 2*.

Cassell has *not* produced *any evidence* demonstrating that any such policies or algorithms existed, or that he was denied medical care based on any such polices or algorithms. *See Burke v. N.D. Dept. of Corrs. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (to prevail on an inadequate medical care claim against a corporation,

a prisoner must prove that "there was a policy, custom, or official action that inflicted an actionable injury"); *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (same). To the contrary, the only evidence in the record is that the CCS's hepatitis review committee routinely monitored and *individually tailored* each prisoner's treatment for hepatitis and the related complications. *Doc. 57, Ex. 4.*

Accordingly, the Court concludes that CCS is entitled to summary judgment, and Cassell's inadequate medical care claim against it should be dismissed, with prejudice.

**D. Griffin**

Cassell alleges that Griffin violated his constitutional rights by failing to take corrective action after reading his grievances and a letter challenging the medical care he was receiving for HCV. *Doc. 2.*

That claim fails, as a matter of law, because Cassell has not demonstrated that he received constitutionally inadequate medical care. In other words, Griffin is entitled to summary judgment because there is *no evidence* that there was a constitutional violation that he should have corrected. *See Parrish v. Ball,* 594 F.3d 99, 1002 (8th Cir. 2010) (to prevail on a corrective inaction claim, a prisoner must establish that the defendants failed to correct a known constitutional violation); *Sims v. Lay,* Case No. 05-2136, 2007 WL 328769 (8th Cir. Feb. 2, 2007) (unpublished decision) (a corrective inaction claim fails, as a matter of law, when there is no

evidence of an underlying constitutional violation).

Accordingly, the Court concludes that Griffin is entitled to summary judgment, and that Cassell's inadequate medical care claim against him should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants Dr. Stieve's, RN Peyton's, APN Griswold's, APN Bland's, and CCS's Motion for Summary Judgment *(Doc. 56)* be GRANTED, and that Cassell's claims against them be DISMISSED, WITH PREJUDICE.

2. Defendant Griffin's Motion for Summary Judgment *(Doc. 62)* be GRANTED, and that Cassell's claim against him be DISMISSED, WITH PREJUDICE.

Dated this 26th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE